UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| BRENT A. GARNER, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No.: 22-cv-2127- JBM |
| | ) |
| SCOTT FLANNERY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* and incarcerated at FCI Greenville, pursues an action under 42 U.S.C. § 1983 for claims of excessive force, failure-to-intervene, conditions of confinement, and deliberate indifference to a serious medical need while detained at the Macon County Jail ("Jail").

The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### ALLEGATIONS

Plaintiff brings his complaint against Assistant Jail Superintendent Scott Flannery, Officer Corey Maloney, Head Nurse Tomika Rehmann, and Macon County Sheriff Jim Root.

1

On February 24, 2022, Plaintiff alleges that he was seated calmly on the ground with his legs crossed and his back against the wall while waiting for a sergeant or lieutenant to arrive during a "peaceful protest" in unit 2-A of the Jail. Between 8:30 and 9:00 a.m. that day, Plaintiff alleges that Defendant Flannery ordered Defendant Maloney and other correctional officers to ambush the unit and to use excessive force. Plaintiff claims that Defendant Maloney ran toward him, stood directly over him as he remained seated on the ground, and used a device to spray unknown chemicals directly in his eyes, which triggered an asthma attack.

Plaintiff states that he ran to his cell after he was sprayed, and that Defendant Flannery ordered Defendant Maloney to shut off the running water in Plaintiff's cell. Plaintiff alleges that he remained locked in his cell for several hours and "was left to die without medical treatment." (Doc. 1 at 9). During the asthma attack, Plaintiff alleges that he repeatedly pushed the emergency button in his cell and that Defendant Rehmann, the Head Nurse at the Jail, failed to respond and did not provide adequate medical treatment.

Plaintiff claims that he continues to suffer mentally and emotionally and that an eye doctor prescribed bifocals for vision difficulties caused by the attack.

**ANALYSIS**

As Plaintiff was a pretrial detainee at the time of the alleged events, his claims arise under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020); *Hardeman v. Curran*, 933 F.3d 816 (7th Cir. 2019). "The difference in standards stems from the fact that pretrial detainees remain entitled to the presumption of innocence, and so the Constitution protects them from any *punishment* for the

acts that led to their detention." *Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022) (citing *Miranda v. Cnty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018)).

Here, Plaintiff pleads that during a "peaceful protest," Defendant Maloney used excessive force by spraying him in the eyes with unknown chemicals, which caused Plaintiff to suffer an asthma attack. Plaintiff states that he was seated calmy on the ground when Defendant Maloney sprayed him. To state an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). Based on his allegations, the Court finds that Plaintiff has stated a colorable excessive force claim against Defendant Maloney.

Plaintiff also claims that Defendant Flannery gave orders to Defendant Maloney to use the device to spray Plaintiff. "There are only two elements to a failure-to-intervene claim: (1) the officer must have reason to know that excessive force is being used; and (2) the officer must have had a realistic opportunity to intervene to prevent the excessive force from occurring." *Conforti v. City of Franklin*, 559 F.Supp.3d 815, 819 (E.D. Wis. 2021) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Here, it appears that Defendant Flannery knew the device would be used and had a realistic opportunity to intervene to prevent the alleged use of excessive force because he ordered Defendant Maloney and other officers to ambush the unit and use the device. Therefore, the Court finds that Plaintiff has stated a colorable failure-to-intervene claim against Defendant Flannery.

Plaintiff alleges that he suffered from an asthma attack after he was sprayed in the eyes and was locked in his cell for several hours without medical attention. Plaintiff claims that he pressed the emergency button in his cell multiple times, but he did not receive medical care from Defendant Rehmann, the Head Nurse at the Jail. To allege a claim for deliberate indifference to a serious

medical need, Plaintiff need only allege that the Defendant's conduct was objectively unreasonable, not that the Defendant was subjectively aware that it was unreasonable. *Miranda*, 900 F.3d at 352. "[A]sthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005). Here, the Court finds that Plaintiff successfully pleads that Defendant Rehmann was deliberately indifferent to his serious medical need by allegedly ignoring his emergency calls and by failing to provide adequate medical treatment for Plaintiff's asthma attack.

Plaintiff also alleges that he remained locked in his cell for several hours without running water because Defendant Flannery ordered Defendant Maloney to shut off the running water in his cell. Plaintiff had just been sprayed in the eyes with unknown chemicals, was suffering from an asthma attack, and had no access to water. Based on Plaintiff's allegations, shutting off the water supply to his cell may have been objectively unreasonable. *Hardeman*, 933 F.3d at 824. "It has been clearly established for decades that prisons must provide inmates with "the minimal civilized measure of life's necessities." *Id.* at 820 (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Woods v. Thieret*, 903 F.2d 1080, 1082 (7th Cir. 1990) ("Clearly, prison officials have a responsibility to provide inmates with a minima of food, shelter and basic necessities."). Here, the Court finds that Plaintiff has stated a colorable conditions of confinement claim against Defendants Maloney and Flannery.

Finally, Plaintiff names Macon County Sheriff Jim Root as a Defendant, but he does not include any allegations regarding Defendant Root in his complaint. Section 1983 does not allow actions against individuals merely for their supervisory role of others. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). An official may be sued in his official or individual capacity; Sheriff Root appears to be sued in his individual capacity; Plaintiff must allege that he personally

4

participated in the deprivation or was deliberately reckless as to the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Plaintiff has made no showing that Defendant Root was personally involved or had knowledge of the alleged constitutional violations. *See Palmer*, 327 F.3d at 594. Therefore, Defendant Root is DISMISSED, without prejudice, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED:**

1. Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states claims under the Fourteenth Amendment for excessive force against Defendant Maloney, a failure-to-intervene claim against Defendant Flannery, a conditions of confinement claim against Defendants Maloney and Flannery, and a claim for deliberate indifference to a serious medical need against Defendant Rehmann. Any claims not identified will not be included in the case, except in the Court's discretion upon motion by a party for good cause shown, or by leave of Court pursuant to Federal Rule of Civil Procedure 15.

2. Defendant Sheriff Jim Root is DISMISSED, without prejudice. The Clerk is directed to TERMINATE him as a party.

3. Plaintiff files [5], a motion for recruitment of *pro bono* counsel. Plaintiff does not, however, indicate that he attempted to obtain counsel on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). Therefore, [5] is DENIED. If Plaintiff renews his motion, he is directed to provide copies of the letters he has sent to, and received from, prospective counsel.

4. This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an

appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5. The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6. Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7. If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8. This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any

motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9. Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

10. Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11. Plaintiff shall be provided a copy of all pertinent medical records upon request.

12. Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: 9/1/2022

s/ Joe Billy McDade
Joe Billy McDade
United States District Judge